IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHANNE LE MON,<br><br>       Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>       Defendant. | MEMORANDUM DECISION and ORDER<br><br>Case No: 2:08-cv-751 DN<br><br>Magistrate Judge David Nuffer |

      Plaintiff Johanne Le Mon filed suit seeking judicial review of the Commissioner's decision denying her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act.[1] This case is before the magistrate judge by consent of the parties under 28 U.S.C. 636(c). After a careful review of the entire record and the parties' submissions, the magistrate judge concludes that the decision of the Commissioner should be affirmed.

      Le Mon applied for DIB and SSI on May 27, 2005, alleging disability since January 25, 1997, due to diabetes, mental problems, fibromyalgia, Parkinson's disease, endometriosis, and a head injury.[2] After her claims were denied initially[3] and on reconsideration,[4] Le Mon requested a

---

[1] 42 U.S.C. §§ 401-433, 1381-1383f.

[2] R. 46, 63, 70-72, 79.

[3] R. 48.

[4] R. 55.

hearing before an administrative law judge (ALJ), which was held on March 19, 2008.[5] At the hearing, Le Mon amended her alleged onset date of disability to March 1, 2002.[6] On May 7, 2008, the ALJ issued a decision finding that Le Mon had the severe impairments of morbid obesity, diabetes mellitus, affective/mood disorder and personality disorder,[7] but was not disabled because she could perform a limited range of light and sedentary unskilled work.[8] The Appeals Council denied Le Mon's request for review,[9] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[10]

**Background**

Le Mon was 45 years old on March 1, 2002, her alleged onset date of disability, and she was 51 years old on the date of the ALJ's decision.[11] She has a high-school education and past-relevant-work experience as an order clerk.[12] Le Mon lost her last full-time job in January 1996, not due to health problems, but because "her job was exported out of the country."[13] She

---

[5]R. 438-77.

[6]R. 442.

[7]R. 16

[8]R. 13-27.

[9]R. 4-6.

[10]*See* 20 C.F.R. §§ 404.981, 416.1481.

[11]R. 70.

[12]R. 468-69.

[13]R. 329.

has been diagnosed as morbidly obese and suffers from non-insulin dependant diabetes mellitus.[14] Le Mon reports suffering from depression for years, increasing after the death of her husband in April 2003.[15] She received mental health services from Wasatch Mental Health from January 2004 to June 2007,[16] when she was discharged for failing to attend the required group therapy.[17]

## Analysis of Claims

### Not Disabled at Age 50

Le Mon claims that the ALJ should have found her disabled when she reached age 50 according to the Medical-Vocational Guidelines (grids). She argues that because the ALJ found she was limited to sedentary work, Medical-Vocational Guideline Rule 201.14 requires him to find her disabled at age 50, on June 4, 2006.

Rule 201.14 states that a person of age 50 to 54 with a high-school education and no transferable skills who is limited to sedentary work is deemed disabled.[18] But contrary to Le Mon's claim, the ALJ did not limit her to sedentary work. Instead, he specifically found that "during the relevant time period, the claimant had the residual functional capacity to perform the full range of light or sedentary, unskilled work"[19] with several accommodating restrictions. The

---

[14] R. 387.

[15] R. 327-28; 447-48.

[16] R. 286-326; 409-32.

[17] R. 431.

[18] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.14.

[19] R. 18.

ALJ determined Le Mon could not lift "more than sedentary lifting,"[20] which is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[21] Even though the ALJ determined that Le Mon's lifting capacity corresponded to that of sedentary work, he also determined that she could stand or walk for no more than 6 hours in an 8-hour work day.[22] This stand/walk capacity exceeds the level of sedentary work[23] and qualifies Le Mon to perform a range of light work,[24] as in a job that involves lifting not more than 10 pounds but requires more than two hours of walking and standing. Consequently, the grids applicable solely to sedentary work did not control the ALJ's determination when Le Mon turned 50 years old because the grids for light work were also applicable during the relevant time period.

In addition, neither Le Mon nor her attorney argued that she should be found disabled under the grids at age 50 in any of the filings or at the hearing before the ALJ. Furthermore, no physician, medical examiner or treatment provider indicated that Le Mon was disabled or unable to work.

---

[20] *Id.*

[21] SSR 83-10.

[22] R. 18

[23] *See* SSR 83-10 (stating "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday").

[24] *See id.* (stating "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

**Claim of Headaches**

Next, Le Mon argues that the case should be remanded because the ALJ failed to address the effects of her migraine headaches. Although the medical records include some references to migraine headaches,[25] just two predate March 1, 2002 - Le Mon's alleged onset date. The first record during the relevant time period is an emergency room visit in April 2005 where Le Mon requested pain medication for a migraine headache.[26] In that record, Le Mon reported that she has migraines about every three to four weeks, and she usually treats the symptoms with ibuprofen and ice. She also stated that she had been recently diagnosed with a possible stroke. The emergency room doctor did not prescribe the requested pain medication after she discovered that Le Mon had not been diagnosed with a stroke in her earlier visit as she reported.[27] Le Mon was discharged with instructions to follow up with her primary care physician.

The second record during the applicable time frame is another emergency room visit in January 2007.[28] At this visit Le Mon complained of a migraine headache, persistent cough and possible pneumonia. Her chest x-ray was negative for pneumonia, and she was treated with Stadol and Phenergan for the migraine and released.[29]

In this case, the ALJ did not err when he failed to discuss Le Mon's two emergency room visits for migraine headaches during the applicable six year time period. "[A]n ALJ is not

---

[25]R. 129, 131, 211, 216, 222, 237, 390.

[26]R. 237-39.

[27]R. 238.

[28]R. 390-92.

[29]R. 392.

required to discuss every piece of evidence."[30] Le Mon herself did not make any reference to disabling headaches during the hearing. Moreover, the records do not contain any suggestion by Le Mon or her treating physicians that the headaches cause significant limitations.

**Credibility**

Le Mon claims that the ALJ failed to give specific reasons supported by substantial evidence to find that her testimony was not credible. Because an ALJ is in the best position to observe the demeanor of witnesses at a hearing, the ALJ's credibility findings are given special deference.[31] The ALJ only needs to set forth the specific evidence he relies on in evaluating a claimant's credibility.[32] In this case, the ALJ found that there was "very little objective basis to support claimant's very severe and extreme alleged functional limitations due to her physical and mental impairments."[33] He then provided legitimate reasons with specific references to the record in support of his credibility finding.[34]

---

[30]*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

[31]*See Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3D 1195, 1201 (10th Cir. 2004)).

[32]*See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[33]R. 20.

[34]R. 19-24.

The ALJ specifically referenced evidence[35] of malingering documented by medical[36] and mental health providers[37] to support his credibility finding.[38] Additionally, the ALJ considered Le Mon's claim that she spent most of her time lying down was inconsistent with the lack of any physical restrictions imposed by her treating physicians and found that her complaints far exceeded the degree of limitation expected in light of the objective medical findings.[39] While citing specific statements made by Le Mon in the record, the ALJ further explained that her allegations of total disability were inconsistent with her daily activities and her ability to handle her personal needs, take long walks, do light housework, prepare meals, and take care of her dog.[40] The ALJ properly set forth the specific evidence he relied on when evaluating Le Mon's credibility.[41]

Le Mon also argues that the ALJ mischaracterized the evidence when he stated that the Wasatch Mental Health records showed most of her global assessment function (GAF) scores

---

[35] R. 23.

[36] R. 238 (emergency room doctor discovered Le Mon had not been diagnosed with a stroke as she reported); R. 335-39 (consulting physician found no evidence or diagnosis of Le Mon's reported fibromyalgia, head injury or Parkinson's disease).

[37] R. 333 (psychological evaluation diagnosed malingering when Le Mon overstated her problems and her testing "clearly showed evidence of somebody that was intentionally trying to do poorly"); R. 418 (treating therapist questioned "the voracity of her reports").

[38] *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (stating that an ALJ's credibility finding should not be disturbed when record contains evidence of hyperbole and exaggeration).

[39] *Id.*

[40] R. 22.

[41] *See Qualls*, 206 F.3d at 1372.

were 55 to 60, which indicated moderate difficulty in social or occupational interactions.[42] Le Mon asserts that several GAF scores were below 50,[43] which would indicate a more severe impairment. Indeed, the records reflect that Le Mon was assessed with GAF scores of 45-50 on several occasions, especially in the first year of more than three years of treatment.[44] But it is clear, even from Le Mon's own argument,[45] that the majority of the GAF scores were above 50 - supporting the ALJ's finding that Le Mon suffered from moderate limitations in social or work interactions. Because the ALJ gave specific reasons supported by record evidence, he did not err in evaluating Le Mon's credibility.

**Later Determination of Disability**

Le Mon's final argument, raised only in her reply brief,[46] is that the ALJ's decision is inconsistent with the Commissioner's later determination that Le Mon is disabled. Le Mon claims that the Commissioner's decision[47] - issued on February 26, 2009, which found her disabled as of May 8, 2008 - "presents a clear conflict on its face between the ALJ's decision and

---

[42]*See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994) (A Global Assessment of Functioning (GAF) code between 51 and 60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning.); R. 20.

[43]*See id.* (A GAF code between 41-50 indicates serious symptoms OR any serious impairment in social, occupational, or school functioning.)

[44]R. 286-326, 409-32.

[45]*See* Plaintiff's Brief in Support of Petition for Review at 14, docket no. 18, filed March 6, 2009 ("Eight of these [27 cited] records show the GAF scores at 50 or less."); Plaintiff's Reply Brief in Support of Petition for Review (Reply) at 7, docket no. 26, filed June 3, 2009 (stating "of the 27 GAF scores in the record, eight show GAF scores of 50 or less").

[46]*See* DUCivR 7-4(a)(3) ("In the Reply Brief, plaintiff shall address only those issues raised in defendant's Answer Brief.").

[47]Initial Social Security Approval, attached as exhibit to Reply.

the Commissioner's later decision."[48] After reviewing the Commissioner's decision, it is clear that no conflict exists. The Commissioner found that Le Mon met the medical requirements for disability benefits as of May 8, 2008 - after the date the ALJ issued the decision denying benefits. Further examination reveals that the Commissioner's determination was based on evidence that was not before or provided to the ALJ.[49] Accordingly, there is no conflict between the ALJ's decision in this case and the Commissioner's later determination that Le Mon met the medical requirements for disability benefits.

**ORDER**

IT IS HEREBY ORDERED that ALJ's decision is AFFIRMED because it is supported by substantial evidence and is free of legal error.

March 17, 2010.

BY THE COURT:

_____

David Nuffer
U. S. Magistrate Judge

---

[48] Reply at 10.

[49] *See* Initial Social Security Approval (listing of evidence considered in deciding claim). Named sources in providing evidence for the approved claim that were not included in the record before the ALJ include: American Fork Chiropractic; Angelea Panos, PhD.; Utah County Health Department; and Utah State Hospital. Because the records considered in approving the claim are not before the court in this action, there is no way to determine if records submitted by sources that were also before the ALJ contain any new or updated medical information. The ALJ held the record open for additional evidence in this case until May 1, 2008, but no additional medical evidence was submitted.